## MUNGER et al. v. TOWN OF WATONGA et al.

No. 15053—Opinion Filed Dec. 9, 1924.

Rehearing Denied Feb. 3, 1925.

**1. Elections—Registration of Voters—Illegal Voting.**

Under the General Registration Act of 1916 it is unlawful for any person to vote in any precinct other than the one in which he resides and is registered, and a ballot cast in any other precinct is void.

**2. Municipal Corporations — Town Bond Election—Designation of Voting Places.**

The president of the board of trustees of an incorporated town, in calling an election for the purpose of submitting to the qualified tax paying voters the question of issuing municipal bonds for the construction of a utility, is authorized and empowered to designate the voting places, but where the town is divided into more than one voting precinct, he is required by law to designate one voting place in each precinct, and such requirement is mandatory.

**3. Same—Only One Voting Place—Invalidity of Election.**

Where the town was divided into regular election precincts and only one voting place was established for all the voters of the town, where they were required to vote without regard to residence or registration, or refrain from voting, the election was void.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Blaine County; Thomas A. Edwards, Judge.

Action by W. H. Munger et al., against the Town of Watonga, Blaine County, Okla., et al. Judgment for defendants, and plaintiffs appeal. Reversed.

Foose & Brown, Ben Smith, and I. H. Lookabaugh, for plaintiffs in error.

George P. Glaze and J. P. Wishard, for defendants in error.

Opinion by RAY, C. The trial court sustained a general demurrer to plaintiffs' petition, from which they have appealed. The suit is to enjoin the town of Watonga, and its regularly elected trustees, from issuing and selling its municipal bonds in the sum of $35,000 for the construction of a convention hall pursuant to an election held June 20, 1923, and from making an estimate and levying a tax to pay the principal and interest.

It appears from the petition that Watonga is an incorporated town with a population of 1,678; that it is divided into four regular election precincts, numbered 17, 20, 26 and 27; that the president of the board of trustees, in his proclamation calling the election, designated only one voting place, that being the regular voting place in precinct No. 26, and designated election officers not residents or qualified voters in that precinct, and that the officers so designated held the election in precinct No. 26; that no voting place was provided for either of the other precincts, and all those voting at the election were required to vote in precinct No. 26 without regard to residence or the precinct of their registration; that 207 ballots were cast, which represented not more than one-half of the qualified tax paying voters of the town; that 118 votes were cast for the bonds and 89 votes against the bonds. The general allegation is made that the purpose of designating only one polling place was to confuse the voters opposed to the bonds, and that it prevented enough of those opposed to the bonds from voting to have defeated the bond issue, if they had voted, and that if there had been a voting place in each precinct there would have been a sufficient number of those voting opposing the bonds to have made a majority against the bond issue. Many other irregularities are alleged not necessary to be considered.

It is argued for the defendants that sec-

tion 1, art. 4, chap. 16, of the Laws of 1909, is a special act governing in such elections, and that by that act the president of the board of trustees was clothed with the discretionary power to designate one 'voting place for the voters of the entire town 'without regard to wards or election precincts.'

By the act of 1909, the mayor, or president of the board of trustees, was authorized to designate the time of the opening and closing of the polls, the number and location of the polling places, and the names of the officers who should conduct the election, such officers to consist of two judges and two clerks for each polling place, and no limitation was placed upon his power to designate the polling places without regard to wards or precincts, but that section was amended by section 458 of the 1910 revision of the statutes. That section is as follows:

"* * * The mayor or the president of the board of trustees shall thereupon issue a proclamation calling such election and shall set forth therein the proposition or propositions to be voted on at such election, the time of opening and closing the polls, the number and location of the polling places, the names of the precinct officers, residents of the precinct, who shall conduct said election, which officers shall consist of two judges and two clerks for each polling place, which officers shall also act as counters, and certify the result to the county election board, who shall canvass the returns as in case of regular elections."

The section, as amended, confers upon the president of the board of trustees power to designate the time of opening and closing the polls, the number and location of the polls as in the original act, but authorizes him to name the **precinct officers, residents of the precinct,** who shall conduct the election. This section is brought forward in the 1921 compilation as section 4392.

Section 1 of the Registration Act of 1916 (chap. 24), sec. 6249, Comp. Stat. 1921, is as follows:

"The word 'elections' as used in this act is hereby declared to mean every general, primary, regular, or special election held in this state, or in any county, city, town, township, school district, or precinct for the nomination or election of federal, state, district, county, municipal, township, school district, or precinct officers, including United State Senators and Members of Congress, and upon any issue submitted to the people of the state or any municipality or subdivision of the state."

By section 6250 it is made the duty of every qualified elector in the state to register, and all persons not registered are prohibited from voting. Section 6252 requires

each qualified elector to register in the election precinct of which he is a resident. By section 6255 each elector may be required to take oath that he is a qualified elector of the precinct. Section 6256 provides for a transfer of registration in case of moving from one precinct to another. By section 6260 the precinct election board is authorized to demand the registration certificate of anyone offering to vote. By section 6263 it is made the duty of the election board to ascertain the qualification of those offering to vote at an election in such precinct. By section 6266, where new election precincts are established, before the elector is qualified to vote, he must reregister in the new precinct.

It is the clear meaning of the general Registration Act of 1916, that registration is a prerequisite to voting at any and all elections, and that the right to vote is limited to the precinct where the elector resides and is registered. The two acts must be construed together. They are not in conflict. The act of 1909, as amended, authorizes the president of the board of trustees to call the election, designate the time of opening and closing the polls, the number of polling places, and to name the precinct officers, residents of the precinct, who shall hold the election. Those provisions have not been repealed and are in force. Section 4392, if construed alone, would indicate that it was the intention of the amendment by the use of the words, "precinct officers, residents of the precinct," "who shall hold the election," that there should be a polling place in each precinct, but, if that language should be deemed uncertain, it is made certain by the general Registration Act which particularly provides that it applies to all elections, including special elections called to vote upon any issue submitted to the people of the state or any municipality or subdivision of the state.

It was the duty of the president of the board of trustees, in calling the election, to designate the polling place in each of the voting precincts, and to name the election officers, residents of the precinct, which it is alleged he did not do. The manner of calling the election required the voters of Watonga, not residents of precinct No. 26, to vote in a precinct other than their residence, and where they were not registered, in violation of the law, or to refrain from voting.

The general rule is that the requirements as to the time and place of holding an election are mandatory. McCrary on Elections (4th Ed.) 161, says:

"Those provisions of law which fix the

time or place of holding elections are to be construed as mandatory and not as merely directory. The reason for this is obvious. Every voter is presumed to know the law, and to be thereby informed as to the time when and the place where he may deposit his ballot; but if that time or place be changed without proper authority and due notice, no voter can be held as legally bound to take notice of the change, and it can never be known how many voters have been deceived thereby, unless, indeed, all the persons entitled to vote should actually attend and vote at the illegal place, which might, perhaps, be held as a waiver of all objections thereto, provided the place was within the voting precinct."

This court, in Goree et al. v. Cahill et al., 35 Okla. 42, 128 Pac. 124, said:

"The requirements of the law relative to the place of holding an election are generally held mandatory, and an election conducted at any other than the designated place is void."

From an examination of the authorities cited in support of the text and the opinion just quoted, we think the law does not preclude changing the voting place from one place in the precinct to another where some emergency has arisen or necessity therefor is made to appear. But in this case the designation of but one polling place in the town was not caused by any emergency. The argument advanced in favor of designating only one voting place is that it was in the interest of economy. While economy is commendable it is not a sufficient reason for violation of statutes clear and unambiguous. In designating a polling place in only one precinct it made it necessary for all the qualified voters residing and registered in the other three precincts to violate the law in order to vote. Not only is every one presumed to know the law but we think that the voters of this state generally understand that they are entitled to register only in the precinct of their residence, and are entitled to vote only in the precinct where registered. Can the presumption be indulged in such case that all the persons qualified to vote at the election, living in the town of Watonga, not residents of precinct No. 26, were willing to go to the polls and vote in violation of the law? We think no such presumption can be indulged. These laws were enacted for the purpose of securing a fair expression of the voters at all elections. To hold this election valid would be to hold, in effect, that the clear, unambiguous, and mandatory provisions of the statute may be ignored at will in the absence of specific acts of fraud. It is not enough to say that the result of the election was a fair expression of the qualified tax-paying voters of the

town of Watonga. There might be a fair expression of the voters without going through the form of an election. The number of people alleged to have voted in this election could easily come together and unanimously agree to the issuance of the bonds, but it would constitute no election for the simple reason that the statute provides the manner and means of recording the will of the voters, and that is by means of the secret ballot at an election called for that purpose. If all the tax-paying voters of the town had agreed in writing to the issuance of the bonds it could not, for the same reason, have constituted authority for the issuance of the bonds binding upon future tax-payers.

The City of Ardmore v. State, 24 Okla. 862, 104 Pac. 913, and Board of Education of the City of Ardmore v. State, 26 Okla. 366, 109 Pac. 563, are not controlling, or in point, for the reason that they arose prior to the 1910 amendment of the 1909 act. Neither is the case of Lamb v. Palmer, 79 Okla. 68, 191 Pac. 184, controlling. In that case an election was called, prior to the enactment of the General Registration Act, to vote upon an extra levy for school purposes. The election was held, and generally acquiesced in, and after the first half of the taxes had been paid a tax payer sought to enjoin the collection of the last half of his taxes upon the ground that the election was illegal. It was not a direct attack upon the election. The tax payer sought to avoid his personal liability after the obligations had been assumed under the election. In this case the suit is brought to enjoin the town and its officials from assuming any obligation under the election. The judgment should be reversed with direction to vacate the judgment and overrule the demurrer to the petition.

By the Court: It is so ordered.

Note.—See under (1) 20 C. J. pp. 68, 83; (2, 3) 28 Cyc. p. 357.