TETTLETON v. CITY OF DUNCAN et al.

No. 32911.    Oct. 19, 1948.

*198 P. 2d 740.*

Bond & Bond and Brown, Cund & Brown, all of Duncan, for plaintiff in error.

Jerome Sullivan and Malcolm E. Rosser, Jr., both of Duncan, for defendants in error.

WELCH, J.    This is an action by C. A. Tettleton, as a taxpaying voter and for others similarly situated, against the city of Duncan and certain public officials to restrain the issuance and sale of certain voted bonds.

It is contended that the election was illegal in that the call and the ballots were insufficient to advise the voters of the questions they were to vote upon and contrary to section 16, art. 10 of the Constitution.

The proclamation calling the election set out the ballot form as follows:

"Shall the City of Duncan, State of Oklahoma, incur indebtedness by issuing its negotiable coupon bonds in the sum of Fifty Thousand and No-100 ($50,000.00) Dollars, to provide funds

632

for the purpose of extending the sewerage system, . . . ?"

"1st ( ) For the above proposition.

"2nd ( ) Against the above proposition."

Testimony was presented that the city commissioners had, prior to the election, adopted a plan for sewer extension which contemplated expenditure of $80,000 to $90,000; that a prior bond issue had been voted for the purpose of building a disposal plant and for sewer extension in the amount of $212,000; that the low bid on the disposal plant was $166,000; that the balance from the $212,000 bond issue and proceeds of the $50,000 issue were estimated as the cost of the extension.

It is the contention of plaintiff that the call for the election was insufficient in that it failed to advise the voters that the city commissioners intended to use approximately $36,000, proceeds from a prior bond issue, along with or in addition to the $50,000, in making the sewerage extension. Borin et al. v. City of Erick et al., 190 Okla. 519, 125 P. 2d 768, is cited, but the stated facts clearly distinguish that case.

In this case, whether the city commissioners expected to use the unexpended balance from the prior bond issue to supplement the proceeds from the $50,000 issue for the purpose of further extending the sewerage system, or expected to use the unexpended balance for sewer extension and thereafter use the $50,000 to further extend the sewerage systems, would not appear to add or detract from the published purpose for which the money is to be used from this issue.

Section 16, art. 10 of the Constitution, reads as follows:

"All laws authorizing the borrowing of money by and on behalf of the state, county, or other political subdivision of the state, shall specify the purpose for which the money is to be used, and the money so borrowed shall be used for no other purpose."

Herein the proposition as voted by the people authorized the borrowing of the $50,000 "for the purpose of extending the sewerage system." The fact that a balance existed from a prior bond issue from which expenditures for a like purpose were contemplated does not indicate that the money from the $50,000 issue was to be used for another or different purpose than for which it was borrowed.

It is next contended that a sufficient number of illegal voters were permitted to vote to change the result of the election.

The election was held in the city of Duncan on August 13, 1946, and a majority of 17 votes were cast in favor of the bond issue. In precinct No. 13 of said city the vote was 30 in favor of the issuance of the bonds and no votes were cast against the proposition. Precinct No. 13 embraces a territory including the Interurban addition to the city of Duncan. Interurban addition was annexed to the city on March 21, 1946. Twenty-two residents of the Interurban addition voted in the election at which time each was a qualified elector and owned property in the Interurban addition and had paid taxes on such property for the year 1945. None of these 22 voters owned any property in the city of Duncan prior to the annexation of Interurban addition, or any property in the city of Duncan outside the Interurban addition at the time of the election.

It is contended that these 22 voters, not owning property in the city in 1945 and not paying taxes in the city for 1945, were not qualified taxpaying voters as required by the Constitution, and as that term is defined by statute.

11 O. S. 1941 §65 reads as follows:

"A 'qualified taxpaying voter' of any incorporated city or town as used in section 27 of article 10 of the Constitution of the State of Oklahoma, is defined to be any qualified elector under the Constitution and laws of the State of Oklahoma, who has actually paid

taxes on property within such city or town, and who has a legal tax receipt therefor dated within twelve months prior to such election, and before any indebtedness under the provisions of section 27 of article 10 of the Constitution shall hereafter be incurred by such city or town, it shall be necessary that the same shall have received more than fifty per centum of all such qualified property taxpaying voters of such city or town."

The exact time these 22 voters paid their 1945 taxes is not shown. Some of them testified they had paid their taxes in 1945. Assuming that each of them paid their taxes prior to the date of the annexation of Interurban addition, it would thus be made to appear that their property at the time the taxes were paid was not in the city. However, their property upon which they had paid taxes was brought into the city prior to the date of the election. We find no requirement in the Constitution or the statutes that a qualified elector shall own property in the city for any particular length of time prior to the election, or that he shall have paid taxes to the city.

These 22 residents of the Interurban addition each owned property within the city on the date they voted in the election and each was a qualified elector "who has actually paid taxes on property within such city;" therefore, each was a "qualified property taxpaying voter" as that term is defined by statute and within the purview of the Constitution.

In proposition three plaintiff submits the testimony of the city engineer of the city of Duncan.

The witness testified from a map that certain lines thereon represented the city's general plan of proposed sewer extension at the time the election was called; that the certain lines indicated the location where certain mains, submains and laterals were expected to be laid.

Plaintiff contends that the issuance of the bonds should be enjoined to prevent the city from paying for lateral sewers out of the proceeds of the bonds in violation of 11 O. S. 1941 §273, which provides that laterals shall be paid for by the owners of the abutting property.

We find no evidence that the city of Duncan expects to pay for lateral sewers. It will not presumed that the funds derived from the sale of the bonds about to be issued will be devoted to unlawful purposes on a mere showing that laterals are to be laid in connection with a plan of sewerage extension. It may be presumed that the part of the contemplated extension chargeable to abutting property by statute will be so charged.

The judgment is affirmed.

HURST, C. J., and RILEY, BAYLESS, CORN, GIBSON, ARNOLD, and LUTTRELL, JJ., concur.