**Tom SETTLE, Plaintiff,**
**v.**
**The CITY OF MUSKOGEE, of the State of Oklahoma, et al., Defendants.**
**No. 43842.**

Supreme Court of Oklahoma.

Dec. 23, 1969.

As Corrected Dec. 31, 1969.

Jan Eric Cartwright, Muskogee, for plaintiff; George J. Fagin and Andrew J. Haswell, Jr., Oklahoma City, J. Scott Brown, Oklahoma City, of counsel.

Chal Wheeler, Andrew C. Wilcoxen, Jr., Muskogee, for defendants.

J. B. Marshall, Edmond, for amicus curiae Oklahoma Municipal League.

Fielding D. Haas, Norman, for amicus curiae City of Norman.

G. T. Blankenship, Atty. Gen. of Oklahoma, Tim Leonard, Asst. Atty. Gen., for amicus curiae.

Roy H. Semtner, Municipal Counselor, James R. Fuson, Asst. Municipal Counselor, for amicus curiae City of Oklahoma City.

DAVISON, Justice.

This is an original action in this court in which we are called on to determine the validity of Art. 10, § 27, of the Oklahoma Constitution. Plaintiff contends Art. 10, § 27, is unconstitutional on the ground that the limitation therein, requiring persons voting at the election therein to be "qualified property tax paying voters," violates the equal protection clause in the Fourteenth Amendment to the United States Constitution.

We accept original jurisdiction of the action because of the public importance of the matter and the need for an early determination of the involved question.

There is no dispute as to the following facts. Plaintiff is not a property taxpayer, but is an otherwise qualified voter in the City of Muskogee. On May 6, 1969, the City, under authority of Art. 10, § 27, of the Oklahoma Constitution, held a special election submitting to the registered qualified property tax paying voters of the City the proposition of whether the City should incur an indebtedness by issuing its bonds in the sum of $750,000, to provide funds for the purpose of acquiring a site for and constructing, furnishing and equipping a public library to be owned exclusively by the City, and to levy and collect an annual tax upon all taxable property in the City sufficient to pay the interest, and the principal of said bonds as they became serially due, within 25 years. The proposition received the required constitutional majority vote in favor thereof. Plaintiff was not allowed to vote in this election because he was not a property taxpayer.

The City commenced proceedings to sell the bonds. The Attorney General of Oklahoma, as ex-officio Bond Commissioner of the State of Oklahoma, duly approved said bonds.

Plaintiff then filed this action for himself and all others in his class against the City and its officers and council. He alleges the facts above narrated and further alleges his interest, and the interest of all members of the community, in the quality of public utilities and in the financing and construction of a public library, and his conclusion that property tax levels affect the price of goods and services in the community. He prays that the election be declared invalid and that the defendants be enjoined from issuing the bonds, on the ground that Art. 10, § 27, violates the Equal Protection Clause.

Art. 10, § 27, of the Oklahoma Constitution allows a city, by a majority of the "qualified property tax paying voters" of such city, voting at an election held for that purpose, to become indebted *in a larger amount than that specified in Section 26*, for the purpose of purchasing or constructing utilities, or for repairing the same, to be owned exclusively by such city; and provides that the city shall collect an annual tax in addition to the other taxes provided for by the Constitution, sufficient to pay the interest and principal of such indebtedness within 25 years.

Art. 10, § 26, of the Constitution provides, among other things, that no city shall be allowed to become indebted to an amount exceeding, in one year, the income and revenue provided for such year, without the assent of three-fifths of the *voters* thereof, voting at an election held for that purpose, "nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five per centum (5%) of the valuation of the taxable property therein, * * *."

The sole issue presented in this case is whether the classification of voters in Art. 10, § 27, violates the Fourteenth Amendment's command that no State shall

deny persons the equal protection of the laws, by providing that only qualified property tax paying voters are permitted to vote for the purpose therein set forth, and thereby rendering ineligible to vote those otherwise qualified voters who do not pay taxes on real or personal property.

In Henry v. Oklahoma City, 188 Okl. 308, 108 P.2d 148, 152, involving the duties of election officials, we stated that the purpose of the above provision in Art. 10, § 27, was to render those qualified voters who do not pay taxes on real or personal property ineligible to vote at an election on the proposition of incurring indebtedness for municipally owned public utility improvements.

This court in many cases (including Bekins v. City of Tulsa, Okl., 299 P.2d 792; City of Shawnee v. Williamson, Okl., 338 P.2d 355, and City of Tulsa v. Williamson, Okl., 276 P.2d 209) has approved numerous bond issues and determined questions raised in connection therewith, all of which arose out of elections held pursuant to Art. 10, § 27. However, none of our cases involved the issue now presented to this court.

From our examination of the authorities we conclude that mere classification of persons for franchise or other purposes is not of itself invalid. The test of the validity thereof is whether, under the circumstances, the classification complies with, or violates, the stated rules of law governing such situations.

In Haas v. Holloman, Okl., 327 P.2d 655, we stated the rule that where a statute operates upon a class, the classification must not be capricious or arbitrary and must be reasonable and pertain to some peculiarity in the subject-matter calling for the legislation.

And, in Walters v. City of St. Louis, 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660 (1954) the court stated:

" * * *. Equal protection does not require identity of treatment. It only requires that classification rest on real and not feigned differences, that the distinc-

tion have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary."

The United States Supreme Court has held that States may, within limits, fix voter qualifications.

In Carrington v. Rash, 380 U.S. 89, 85 S. Ct. 775, 13 L.Ed.2d 675 (1965) the court said:

" * * *. There can be no doubt either of the historic function of the States to establish, on a nondiscriminatory basis, and in accordance with the Constitution, other qualifications (than residence) for the exercise of the franchise. Indeed '[t]he States have long been held to have broad powers to determine the conditions under which the right of suffrage may be exercised.[1] Lassiter v. Northhampton County Bd. of Elections, 360 U.S. 45, 50, 79 S.Ct. 985, 989, 3 L.Ed.2d 1072 [1076]."

We also find in Avery v. Midland County, Texas, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), the following statement: "The Constitution does not require that a uniform straitjacket bind citizens in devising mechanisms of local government suitable for local needs and efficient in solving local problems."

Plaintiff cites and relies upon Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), and Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969). In the Kramer case a law of the State of New York establishing a classification of voters permitted to vote at a school board election was declared unconstitutional. In the Cipriano case a law of the State of Louisiana giving only "property taxpayers" the right to vote in elections called by a municipality to approve the issuance of revenue bonds for the purpose of acquiring, extending or improving revenue-producing public utilities was declared unconstitutional.

Our approach to the determination of the question presented in the case now before

us will be that used in the Kramer case in which the court stated as follows:

" 'In determining whether or not a state law violates the Equal Protection Clause, we must consider the facts and circumstances of the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification.' Williams v. Rhodes, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968)."

We construe Kramer and Cipriano to hold that a statute or a state constitutional provision having a voter classification restricting the right to vote to one class, thus denying it to another class, is not violative of the equal protection clause, (1) where the exclusions are necessary to promote a compelling state interest, and (2) where those excluded are in fact substantially less interested or affected than those included. We also consider the question of whether the classification in Art. 10, § 27, limits the franchise to those voters "primarily interested." These are the tests to be applied to Art. 10, § 27, Oklahoma Constitution.

Under the provisions of Sec. 27, the election is held, not only to secure approval of incurring municipal indebtedness, but to also secure approval of the important and essential matter of levying a specific additional tax on the property of taxpayers sufficient to pay the principal and interest of the indebtedness. An otherwise sufficient vote pursuant to Sec. 27, is without effect unless provision is made to make the tax levy. Application of City Council of the City of Tahlequah, Okl., 285 P.2d 418. When this procedure is followed and the property tax paying voters approve the debt and levy of taxes upon their property, the city may incur indebtedness in excess of the debt limitation of five per centum of the valuation of taxable property otherwise prescribed in Art. 10, § 26. In this manner a city may incur indebtedness greater than that allowed by Sec. 26.

It is self-evident that the drafters of the Constitution recognized the need and value of public utilities to the State's people and economy, and it is also apparent that they knew the importance of municipal solvency. Thus, the general electorate may vote on the creation of indebtedness to the extent provided in Sec. 26, but authorization of indebtedness in excess thereof was restricted by Sec. 27 to a favorable vote by property tax paying voters, whose property is subject to a tax levy to pay the approved indebtedness.

By such a plan and classification the solvency of Oklahoma's cities and towns is virtually assured and the taxpayers are given protection against confiscatory taxes. This conclusion is justified, because the power to authorize the city to incur unlimited indebtedness for public utility purposes is placed in the hands of those persons who pay the indebtedness and who have knowledge of the municipality's capability of satisfying its indebtedness from the proceeds of a special tax on their property. These are the compelling State interests.

We now turn to the question of whether the plaintiff and other persons excluded from voting by reason of not being taxpayers are substantially less interested or affected than those persons permitted to vote. In discussing this proposition in Kramer the court treated it as a part of the "compelling state interest" test. This is our construction of the Kramer decision.

Defendants admit that plaintiff is to some extent "interested," and we can conceive that plaintiff could be "affected" in some degree by reason of the city incurring indebtedness and levying a tax on property to finance a public utility (in this case a library), even though plaintiff is not a taxpayer. However, we are of the opinion that in the present situation the plaintiff is substantially less interested or affected than those persons permitted to vote in the election. Our prior discussion regarding "compelling state interest" supports this conclusion.

We point out that this is not an election for the selection of a person for a public

office, whose official acts involve legislative or executive duties of a discretionary nature. The election is to incur municipal indebtedness, and the result thereof and the law control the later action to be taken relative to the subject matter. We emphasize that this is an election under a constitutional provision authorizing an indebtedness in excess of the maximum amount the general electorate may approve. It is to be satisfied by a tax paid by property taxpayers who are primarily interested or affected by reason of an increase in the city's debt and their taxes. Plaintiff does not pay any tax. His resulting detriment or expense, if any, arising from the higher tax level, is a proportionate part of the relatively small additional expense spread across the population of the city. The extent to which plaintiff is interested or affected is indirect and remote.

It is our conclusion that Art. 10, § 27, Oklahoma Constitution, complies with the test requirements set forth in Kramer and Cipriano.

It is our further conclusion that Art. 10, § 27, validly limits voting to those persons "primarily interested."

The facts in Kramer and Cipriano are not the same as those in the present case.

In Kramer the classification involved persons entitled to vote at a school board election. The statute presented a complicated formula under which the only persons entitled to vote were those falling within one or more classifications, consisting of the owner or lessee of taxable property, or the spouse thereof, or the parent or guardian of a child enrolled in school for a specified time during the preceding year. The court demonstrated and found that the classification permitted inclusion of persons who had, at best, a remote and indirect interest in school affairs, and excluded others who had a distinct and direct interest in school meeting decisions. The court said the requirements of the law were not sufficiently tailored to limiting the franchise to those "primarily interested" in school affairs. This is not the situation in the present case.

In the Cipriano case the law restricted voting on public utility *revenue* bonds to property taxpayers. The revenue bonds were not financed in any way by property tax revenue, but were paid only from revenue derived from operations of the utilities. The court said that both property owners and non-property owners used the utilities and paid the rates, and consequently the statutory classification excluded otherwise qualified voters who were as substantially affected and interested in the matter voted upon as were those who were permitted to vote. In the present case the bonds are not revenue bonds. They are paid by the property taxpaying voters.

It is our conclusion that Art. 10, § 27, of the Oklahoma Constitution does not violate the Equal Protection Clause of the Fourteenth Amendment.

Writ denied.

All Justices concur.