**Tom SETTLE, Plaintiff,**

**v.**

**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF MUSKOGEE, of the State of Oklahoma, Norman Brazil, Chairman, and Kenneth Ward, Member, and Fred Shelton, Member, constituting the Board of County Commissioners of said County, Defendants.**

**No. 43812.**

Supreme Court of Oklahoma.

Dec. 23, 1969.

As Corrected Dec. 31, 1969.

Jan Eric Cartwright, Muskogee, for plaintiff.

George J. Fagin and Andrew J. Haswell, Jr., Oklahoma City, Chal Wheeler, Muskogee, for defendants.

G. T. Blankenship, Atty. Gen., Tim Leonard, Asst. Atty. Gen., for amicus curiae.

J. B. Marshall, Edmond, for amicus curiae Oklahoma Municipal League.

DAVISON, Justice.

Plaintiff files an original action in this court attacking the constitutionality of Art. 10, § 35, of the Oklahoma Constitution, which was adopted at a special election held May 1, 1962. Plaintiff contends Art. 10, § 35, is unconstitutional on the ground that the requirement therein, limiting voting at the election therein provided to "qualified taxpaying voters," violates the equal protection clause in the Fourteenth Amendment to the United States Constitution.

We accept original jurisdiction of the action because of the public importance of the matter and the need for an early determination of the question.

This case presents an issue similar to the one considered in Settle v. City of Muskogee, Oklahoma, 462 P.2d 642.

The parties agree on the following facts. Plaintiff is not a real or personal property taxpayer of Muskogee County, but is otherwise qualified to vote in Muskogee County. On September 9, 1969, the County, under authority granted in Art. 10, § 35, held a special election submitting to the registered qualified taxpaying voters of the County the proposition of whether the County should incur an indebtedness by issuing its bonds in the sum of $2,000,000, to provide funds for the purpose of securing and developing industry in the County, and to levy and collect an annual tax upon all real and personal property in the County but not in excess of 5 mills, sufficient to pay the principal and interest on the bonds as they became due, within 30 years. The proposition received the required favorable vote. Plaintiff was denied the right to vote because he was not a taxpaying voter.

The County officers are now threatening to issue a portion of the bonds and use the proceeds for the purposes set forth in the Proposition.

Plaintiff filed this action against the County and its Commissioners, alleging the facts above set out, alleging he and the members of the community have an interest in the development of new industry and the resulting change in the economic structure, and that all qualified electors should be allowed to vote on the Proposition. He alleges that the level of property taxation affects the price of goods and services. He prays that the election be declared invalid and the defendants enjoined from issuing bonds on the ground that Art. 10, § 35, and the election violate the Equal Protection Clause.

Art. 10, § 35, Oklahoma Constitution, provides that a county may, by consent of the majority of the "qualified taxpaying voters" of the county voting at an election thereon, issue bonds for the purpose of securing and developing industry within the county, and levy a special annual tax, not to exceed 5 mills on the dollar, on the real and personal taxable property therein to pay the bonds within 30 years. It provides that the county commissioners shall have jurisdiction over the sale of the bonds

and that they shall economically expend the funds, and give them authority to coordinate their industrial development plans and projects insofar as practical with those of local industrial development agencies.

The sole question presented is whether the exclusion of plaintiff from voting on the bonds, because he was not a property taxpayer, violates the equal protection clause in the Fourteenth Amendment.

In Settle v. City of Muskogee, supra, we stated the general rules of law governing classifications of persons and voters, citing Haas v. Holloman, Okl., 327 P.2d 655; Walters v. City of St. Louis, 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660 (1954) and Carrington v. Rash, 380 U.S. 89, 85 S. Ct. 775, 13 L.Ed.2d 675 (1965). We adopt these rules as being equally applicable in the present case.

In addition thereto, we find in Avery v. Midland County, Texas, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), the following statements: "The Equal Protection Clause does not, of course, require that the State never distinguish between citizens, but only that the distinctions that are made not be arbitrary or invidious," and "The Constitution does not require that a uniform straitjacket bind citizens in devising mechanisms of local government suitable for local needs and efficient in solving local problems."

Plaintiff cites and relies upon Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), and Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969).

In determining whether Art. 10, § 35, violates the equal protection clause, we consider the facts and circumstances of the law, the interests the State claims to be protecting, and the interests of those allegedly disadvantaged by the classification. Kramer v. Union Free School District, supra.

We construe Kramer and Cipriano to hold that a statute or state constitutional provision having a voter classification is not in violation of the equal protection clause, (1) where the exclusions are necessary to promote a compelling state interest, and (2) where those excluded are in fact substantially less interested or affected than those included. In connection with the above propositions we also consider the question of whether the classification in Art. 10, § 35, limits the franchise to those voters "primarily interested."

It is clear from the provisions of Art. 10, § 35, that the Legislature in proposing the adoption thereof, and the electorate in adopting the same, concluded it was desirable and beneficial to secure and develop industry in the State. To accomplish this purpose, Sec. 35 provides a procedure by which the county may incur additional indebtedness and a means by which the indebtedness is to be paid. The decision to accomplish the purpose of Sec. 35, and to procure for the community the benefits contemplated therein, rests with the qualified taxpaying voters. Their decision to incur the debt for this particular purpose subjects their property to a specific additional tax to satisfy the debt, with no liability on the part of non-taxpaying voters. In other words, taxpaying voters create the debt for this purpose, and only their property is ultimately liable for judgment of the debt.

We now take up the question of whether plaintiff and persons in his class are substantially less interested or affected than those persons permitted to vote.

We assume that plaintiff and some persons in his class are "interested," and we can conceive that they are "affected" in some small degree by the securing and developing of industry in the community with the resulting contemplated benefits. However, we are here dealing with a distinct classification, those who are directly interested and affected by incurring the debt and subjecting their property to taxes for a special purpose, and those who in our opinion are indirectly and remotely affected by such action. This is not like an election to select a person for public office, the impact of whose official and

discretionary acts directly affect the people as a whole or voters as a group.

It is our conclusion that Art. 10, § 35, validly excluded plaintiff and his class from voting to promote a compelling state interest. It is our further conclusion that plaintiff and his class are substantially less interested or affected than the property taxpaying voters permitted to vote at the election.

Based upon these conclusions and the circumstances of this case, we are of the opinion that Art. 10, § 35, validly limits voting to those persons "primarily interested."

In our decision in Settle v. City of Muskogee, supra, we discussed the obvious lack of similarity of the state laws and circumstances in Kramer and Cipriano to those in the City of Muskogee case. We adopt this discussion to show that the facts in Kramer and Cipriano are clearly distinguishable from those in the present case.

It is our conclusion that Art. 10, § 35, of the Oklahoma Constitution does not violate the Equal Protection Clause of the Fourteenth Amendment.

Writ denied.

All Justices concur.