Barbara J. BEAUCHAMP, Plaintiff,

v.

OKLAHOMA CITY, a Municipal Corpora-
tion, James H. Norick, Mayor of the City
of Oklahoma City, Patience Latting, John
M. Smith, George N. Sturm, Nelson E. Kel-
ler, Bill H. Bishop, Ben Franklin, A. L.
Dowell and Rowe Cook, Members of the
City Council, Defendants.

No. 44475.

Supreme Court of Oklahoma.

Oct. 16, 1970.

Certiorari Denied Nov. 16, 1970.

See 91 S.Ct. 175.

James E. Work, Oklahoma City, for
plaintiff.

Roy H. Semtner, Municipal Counselor,
James G. Hamill, Walter M. Powell, Ro-

land Tague, Asst. Municipal Counselor's, Oklahoma City, for defendants.

IRWIN, Chief Justice.

This is an original action filed in this Court on September 17, 1970, in which the plaintiff contends that the portion of Art. 10, § 27, of the Oklahoma Constitution, requiring persons voting at the election therein provided, to be "qualified property tax paying voters," violates the equal protection clause in the Fourteenth Amendment to the United States Constitution.

We accept original jurisdiction of the action because of the public importance of the matter and the need for an early determination of the involved question.

There appears to be no dispute as to the facts. On June 9, 1970, the City, pursuant to Art. 10, § 27, of the Oklahoma Constitution, held a special election in which eleven propositions were submitted to the registered qualified tax paying voters of the City as to whether the City should incur indebtedness by issuing its general obligation bonds in amounts totaling more than $69,000,000.00, to provide funds for the several purposes of purchasing and/or constructing public improvements consisting of sanitary sewers, storm sewers, water works systems, solid-waste disposal system, municipal maintenance and service facility, fire stations and equipment, traffic control, airports, park and recreational facilities, municipal libraries and public transportation system. Included in the election was the further matter of levying and collecting an annual tax upon all taxable property in the City to pay the interest and principal of the bonds as they became serially due.

The propositions received the required majority vote in favor thereof. Plaintiff was not allowed to vote in this election because she was not a property taxpayer.

The City then commenced proceedings to sell more than $19,000,000.00 of said bonds. The Attorney General of Oklahoma, as ex-officio Bond Commissioner of the State of Oklahoma, approved the bonds on August 18, 1970. Title 62 O.S.1961, § 13, provides that bonds of a municipality shall be incontestable unless suit is brought thereon within thirty days from the date of such approval.

Plaintiff then filed this action against the City and the members of the City Council on September 17, 1970, for herself and all others in her class. She alleges the facts above narrated. The parties stipulate that plaintiff is not a real or personal property taxpayer but is an otherwise qualified and registered voter in the City of Oklahoma City. Plaintiff alleges that only qualified property tax paying voters were permitted to vote at the election, and thereby she was excluded from voting. She prays that the defendants be enjoined from issuing the bonds, on the ground that Art. 10, § 27, violates the Equal Protection Clause of the Fourteenth Amendment.

Our Constitution, Art. 10, § 26, provides that no city shall become indebted in an amount exceeding, in one year, the income and revenue provided for such year, without the consent of three-fifths of the *voters* thereof and even then the indebtedness could not exceed, including existing indebtedness, 5% of the valuation of the taxable property therein.

Art. 10, § 27, of the Constitution allows a city, by a majority of the "qualified property tax paying voters", to become indebted "in a larger amount than that specified in section twenty-six" for the purpose of purchasing or constructing public utilities, or for repairing the same, and provides that the city shall collect an annual tax sufficient to pay the indebtedness. Our construction of Art. 10, § 27, supra, was recently re-considered in Settle v. City of Muskogee, Okl., 462 P.2d 642, promulgated in December, 1969. In Settle, we also discussed our understanding of the principles announced in Kramer v. Union Free School, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), and Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969). We held, for the reasons stated in the Settle case, that § 27 of Art.

10, did not conflict with these principles and that § 27 did not violate the Equal Protection Clause of the Fourteenth Amendment. This Court has for many years been committed to the rule in the Settle case that only taxpayers owning real or personal property, as provided in Art. 10, § 27, may vote for incurring indebtedness for the public improvements enumerated therein. Henry v. Oklahoma City, 188 Okl. 308, 108 P.2d 148.

After our decision in the Settle case, supra, and subsequent to the election in the instant case (June 9, 1970), the United States Supreme Court (June 23, 1970) decided City of Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523. In Phoenix the Supreme Court of the United States held that the Arizona Constitution and statutes, as applied to exclude non-property owners from voting in elections to approve issuance of general obligation bonds, violated the equal protection clause of the U. S. Constitution. However, the Supreme Court recognized that it would be unjustifiably disruptive to give its decision full retroactive effect and placed a limitation thereon. The language limiting the retroactive effect of the decision is set forth in a dismembered form for clarification:

"* * * We therefore adopt a rule similar to that employed with respect to the applicability of the Cipriano decision: our decision in this case will apply only to authorizations for general obligation bonds which are not final as of June 23, 1970, the date of this decision.

(a) "In the case of States authorizing challenge to bond elections within a definite period, all elections held prior to the date of this decision will not be affected by this decision unless a challenge on the grounds sustained by this decision has been or is brought within the period specified by state law.

(b) "In the case of States, including apparently Arizona, that do not have a well-defined period for bringing challenges to bond elections, all elections held prior to the date of this decision that have not yet been challenged on the grounds sustained in this decision will not be open to challenge on the basis of our ruling in this case. * * *"

The parties have submitted this case to our Court for determination of a single issue and that is: Does Oklahoma have a well-defined period for bringing challenges to general bond elections within the meaning of City of Phoenix?

Plaintiff contends that Oklahoma has a definite period for challenging general bond elections; that paragraph (a) is applicable; and that this Court should enjoin the issuance of the bonds.

Defendants contend that Oklahoma does not have a well-defined period for bringing challenges to general bond elections; that paragraph (b) is applicable; and that this Court should not enjoin the issuance of the bonds.

The election on the bonds under consideration was held on June 9, 1970, and the decision in Phoenix was rendered on June 23, 1970. The bonds in question were approved by the Bond Commissioner of Oklahoma on August 18, 1970, and thereafter and within the time allowed by 62 O.S.1961, § 13, a challenge to the approval of the bonds was brought on the grounds sustained in Phoenix.

The only statutory enactment that is pertinent to the issue involved is 62 O.S. 1961, § 13, which provides:

"It shall be the duty of the Bond Commissioner to prepare uniform forms and prescribe a method of procedure under the laws of the State in all cases where it is desired to issue public securities or bonds, in any county, township, municipality or political or other sub-divisions thereof of the State of Oklahoma; and it shall be the further duty of said Bond Commissioner to examine into and pass upon any security as issued, and such security, when declared by the certificate

of said Bond Commissioner to be issued in accordance with the forms of procedure so provided shall be incontestable in any court in the State of Oklahoma unless suit thereon shall be brought in a court having jurisdiction of the same within thirty days from the date of the approval thereof by the Bond Commissioner."

As a practical matter the Bond Commissioner does not perform his duties under the above enactment until a general bond election has been held and the proceedings leading to the sale of the bonds have been completed. In many instances, the Bond Commissioner is requested to consider the legality of only a part or a series of the bonds that have been approved at a bond election. Thereafter, he may be requested to consider another part or another series of the bonds that a municipality desires to sell that had been approved at the previous election. As an example: General obligation bonds are approved at an election held in February, 1969. On June 1, 1969, the Bond Commissioner approves the issuance of a certain series of the bonds approved at the February 1969, election. Thirty days after the Bond Commissioner has acted, his determination is no longer open to challenge. Thereafter, the Bond Commissioner approves another series of bonds which were voted upon and approved at the February, 1969, bond election. Thirty days after the Bond Commissioner has acted, his determination is no longer open to challenge.

The Bond Commissioner is not required to perform his duties or act under § 13, supra, within a specified time, but thirty days after he has acted his determination is no longer open to challenge. It is to be noted that the above enactment is directed to the Bond Commissioner's determination as to the legality of the bonds to be issued, but is silent concerning a challenge to a general bond election or the period of time within which a challenge to the election may be brought. This Court has recognized that an action may be brought to challenge the validity of a bond election prior to the Bond Commissioner's official actions pursuant to § 13, supra, notwithstanding the fact there is no specific statutory authority authorizing such action.

In Munger v. Town of Watonga, 106 Okl. 78, 233 P. 211, an action was filed to enjoin the issuance and selling of certain municipal bonds. At issue was the conduct of the election. The trial court sustained a demurrer to plaintiff's petition and on appeal this Court reversed with directions to vacate the judgment and overrule the demurrer to the petition. Although § 13, supra, was not discussed, Munger is authority for challenging the conduct of an election prior to the action by the Bond Commissioner.

In Gilliland v. City of Clinton, 131 Okl. 186, 268 P. 254, an action was filed in the trial court to enjoin the sale of bonds on the grounds of illegal voting. A temporary injunction was issued and a motion to dissolve the temporary injunction was filed. On hearing the motion, the temporary injunction was dissolved and an appeal was perfected. We affirmed the judgment of the trial court on the ground that we did not think, under the record, that the election was void. Although § 13, supra, was not discussed, this case is authority for challenging the conduct of an election prior to the action by the Bond Commissioner.

In White v. Pottawatomie County, 199 Okl. 103, 184 P.2d 446 (1947), an action was filed against the Board of County Commissioners, the County Treasurer and the Attorney General to enjoin the issuance of bonds prior to the time the Attorney General, acting as the Bond Commissioner had performed his duties pursuant to § 13, supra. In that case we held:

"The question whether the election at which bonds were voted is legal or illegal is a matter properly to be considered by the Commissioner in the performance of his duty.

"Subsequent to the holding of an election at which bonds are voted and previous to the performance by the Bond Commissioner of the duties prescribed by law with reference thereto the citizen taxpayer is without capacity or authority to sue in the courts to have such bonds declared illegal because of the illegality of such election."

■ Although the Pottawatomie County case and § 13, supra, were not considered or discussed in Tettleton v. City of Duncan, 200 Okl. 631, 198 P.2d 740 (1948), the decision in Tettleton, modified by implication, our holding in the Pottawatomie County case that a taxpayer was without authority to sue previous to the performance of the Bond Commissioner. In Tettleton, an action was brought to restrain the issuance and sale of certain bonds prior to the certification of the Bond Commissioner. The election was challenged on the grounds that the call and the ballots were insufficient to advise the voters of the question presented and that a sufficient number of illegal voters were permitted to vote to change the result of the election. The trial court sustained a demurrer to plaintiff's evidence and we affirmed on appeal. Tettleton clearly establishes that an action may be maintained to challenge the legality of a bond election prior to the performance of the Bond Commissioner.

The Pottawatomie County case was cited with approval in Rieck v. Town of Longdale, Okl., 389 P.2d 482 (1964). In Rieck, the Bond Commissioner was not joined as a party defendant and this Court held:

"Subsequent to the holding of an election at which bonds are voted and previous to the performance by the Bond Commissioner of the duties prescribed by law with reference thereto, the citizen taxpayers' suit in the courts to have such bonds declared illegal because of *the illegality of such election [may be abated upon proper motion]*."

Although Rieck cited with approval the Pottawatomie County case, it did not hold that a taxpayer was without capacity or authority to sue to have bonds declared illegal because of the illegality of the election, prior to the action by the Bond Commissioner, as held in the Pottawatomie County case; but held that a taxpayer's suit in the courts to have bonds declared illegal because of the illegality of the election may be abated upon proper motion, where the suit is filed previous to the action of the Bond Commissioner.

Our Court has never had the occasion to consider a case wherein an action was pending in a trial court at the time the Bond Commissioner performed his duties under § 13, and one reason for this is: When a municipality submits a request to the Bond Commissioner to determine the legality of a general bond issue, the municipality, through its proper officials, certifies that no litigation is pending questioning or affecting the legality of the bond issue.

■ The only issue presented in this original action is whether Oklahoma has a well-defined period for bringing challenges to general bond elections within the meaning of City of Phoenix, supra. Since our decisional law recognizes that an action may be maintained prior to the time the Bond Commissioner performs his duties under § 13, supra; and there is no statute prescribing the time in which the Bond Commissioner is required to perform his duties under § 13, supra; we can only conclude and hold that Oklahoma does not have a well-defined period for bringing challenges to general obligation bond elections within the meaning of City of Phoenix, supra.

■ We further hold that the general obligation bond election held by the City of Oklahoma City, Oklahoma, on June 9, 1970, having not been challenged prior to the date of the decision in City of Phoenix, supra, is not open to challenge on the basis of the ruling in City of Phoenix, supra.

Plaintiff's prayer for an injunction is denied.

BERRY, V. C. J., and BLACKBIRD, JACKSON and LAVENDER, JJ., concur.

DAVISON and WILLIAMS, JJ., concur specially.

HODGES and McINERNEY, JJ., dissent.

DAVISON, Justice (concurring specially).

In concurring specially I desire to express my views for denying plaintiff's prayer for the injunction.

In City of Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523, the question presented was: Does the Federal Constitution permit a State to restrict to *real property taxpayers* the vote in elections to approve the issuance of general obligation bonds? The court, with three Justices dissenting and one Justice abstaining, extended the principles in the Kramer and Cipriano cases and held that the Arizona Constitution and statutes, as applied to exclude non-owners of real property from voting in elections to approve issuance of general obligation bonds, violated the Federal Constitution. In making the determination the majority of the court concluded that "The differences between the interests of real property owners and the interests of non property owners are not sufficiently substantial to justify excluding the latter from the franchise."

I believe and conclude that there are significant and controlling facts that distinguish the situation in the instant case from that in the Phoenix case. In the present case the constitutional provision (Art. 10, § 27) permits *personal property taxpayers* and *real property taxpayers* to vote. A tax is required to be levied upon their personal and real property to pay the bonds. In Arizona voting was restricted to real property taxpayers. In the present case § 27 permits the property taxpaying voters to incur indebtedness and encumber their property *without limit*. In Phoenix the question as to whether or not a state could constitutionally confer upon all of

its electors exclusive and absolute power to incur general bonded indebtedness *without limit* at the expense of personal and real property owners was not presented or considered. The importance and significance of this distinguishing feature of our Constitution was fully presented and discussed in Settle v. City of Muskogee, Okl., 462 P.2d 642.

It is my opinion that the Phoenix decision is not controlling in the present situation.

I am authorized to state that Mr. Justice WILLIAMS concurs in the above views.

WILLIAMS, Justice (concurring specially).

I agree with the views expressed in the majority opinion herein this day promulgated of effect that Oklahoma does not have a well-defined period for bringing challenges to general obligation bond elections as contemplated in the referenced opinion of the Supreme Court of the United States and that the special election herein involved is not now open to challenge on the basis of that opinion. Moreover, I desire to express my further views as hereinafter appearing.

A state may establish other qualifications than residence for the exercise of the elective franchise. Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965). Equal protection of the law does not require identity of treatment. It does require that classification be based on real differences, not wholly arbitrary. Walters v. City of St. Louis, 347 U.S. 231, 74 S.Ct. 505, 98 L. Ed. 660 (1954). Settle v. City of Muskogee, Okl., 462 P.2d 642, 646 (1969).

Since 1940, at the latest, our Constitution has been of interpretation as rendering "ineligible to vote on the question of bonded debts by municipalities those qualified voters who do not pay taxes on *real* or *personal* property." (Emphasis supplied). Henry v. Oklahoma City et al., 188 Okl. 308, 108 P.2d 148, 152, (1940).

In my opinion, the first paragraph of the opinion of the majority of the Court

in the case of Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970), distinguishes that case on the facts from our present case. There, the question was stated to be: Does the Federal Constitution permit a State to restrict to *real* property taxpayers the vote in elections to approve the issuance of general obligation bonds? (Emphasis supplied).

From the facts stated in *Phoenix* and the notes appended thereto a second compelling variance from our facts is set forth. There it is stated that property taxes were to be levied to service the involved indebtedness but in addition, the City was authorized to allocate other revenues for the same purpose and, in fact, on a general obligation debt service requirement of $5,594,937.00 for fiscal year 1969–1970, made a payment, typical of those made in recent years, of more than 55% of such general obligation service requirements or to be exact from such other sources paid $3,244,773.00 thereof.

Here, the applicable State Constitutional provision requires annual tax levies on *personal* and *real* property in the city, sufficient to meet *all* interest and principal maturities. Of course, a city may pay for permanent capital improvements out of current earnings as distinguished from ad valorem levies. Alsip v. City of Chandler, Okl., 408 P.2d 512 (1965). However, this was not firmly established until 1965 in *Alsip,* wherein are cited other earlier cases of that effect.

And, while it may be done, it is well known that only in six or eight cities and towns in Oklahoma in the past half century or so have there been sufficient funds from sources other than ad valorem tax revenues to pay any considerable amount of the expenses of municipal government above those categories of expenditures to which they were primarily allocable, viz., the cities of Stillwater, Wynnewood, et al. And, in each of those instances I daresay they were paid with funds produced from waterworks originally built from bond money taxable back to the owners of *real*

and *personal* property, if not paid by revenues from the involved utility.

As to the facts of the present case, everybody knows Oklahoma City has issued millions of dollars in revenue bonds repayable from sewer taxes, water rents and what not to build capital improvements not obtainable from tax revenues within the constitutional debt limits, and had to enact a sales tax to make salary adjustments for its employees. This is not a condemnation of Oklahoma City. To the contrary, it demonstrates that Oklahoma City and its citizens and officials must use all lawful and constitutional sources of revenue available to provide the varied services required of so large a modern, metropolitan, growing city and yet maintain its cash position "in the black".

In copy of the published election proclamation attached to petition filed in the trial court in the case from which the appeal, sister to this case, arose, pursuant to authority vested in Oklahoma City by Article X, Section 27, Oklahoma Constitution, the City specified in the several involved propositions being voted upon that in addition to, that is, on top of all other taxes of all sorts the *personal* and *real* property ad valorem taxpayers were already paying, that those such taxpayers who voted were voting tax liens for different, additional taxes against their such respective properties.

In the election with which we are here concerned, it is my belief that the election authorities have not arbitrarily discriminated against any one for the following re-emphasized reasons, to-wit:

1. In *Phoenix,* Mrs. Kolodzieski was a qualified voter except that she owned no taxable *real* estate. As an owner of taxable *personalty,* in Oklahoma City at the involved election she would have been welcomed at the polls.

2. Oklahoma City must and perforce will pay for the improvements obtained with the proceeds of this bond issue from revenues received *only* from ad

valorem taxes on *real* and *personal* property.

I respectfully concur specially.

McINERNEY, Justice (dissenting).

I dissent from the decision of the majority to accept jurisdiction in this original proceeding. I would deny the application to accept jurisdiction and leave Plaintiff to her remedy in the District Court.

A delay in the early determination of the question of public importance would not necessarily result. Our decision in Supreme Court case Martin et al. v. Oklahoma City, 477 P.2d 58, decided this date, is an *appeal* from the District Court by two protestants to the identical bond election challenged in this original proceeding. The absence of a record in a true adversary proceeding coupled with the stipulation herein precludes inquiry into whether the status of Barbara J. Beauchamp as an unqualified voter in general obligation bond elections is self-imposed, 68 O.S.Supp.1965, §§ 2431, 24201, or legally imposed, Art. 10, § 27, Oklahoma Constitution. If the former, Plaintiff's standing to institute this action is questionable.

There are only two reasons why the U. S. Supreme Court has held exclusion of non-property taxpayers unconstitutional. One is that it discriminates against the impoverished. See Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169, (1966). The other is that such an exclusion is irrational as applied to persons who *indirectly* pay such taxes through the form of higher rents to their landlords, and such. City of Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970).

Although the Plaintiff externally appears to come within the *results* of the foregoing cases, she fails to allege or prove that she comes within the *reasons* therefor. First, Plaintiff makes no plea of personal poverty. *Harper*, supra. Second, while Plaintiff correctly states that the U. S. Supreme Court has sustained the indirect payment of property taxes theory, *Phoenix*, supra, she totally ignores the fact that payment of *personal* taxes would by itself have been sufficient to entitle her to vote at the challenged election; and by the very nature of the *personal* tax there can be no "vicarious" or "indirect" payment of the tax (in the sense of property taxes paid by landlords being passed on to their tenants in the form of increased rents, and the like).

It would appear, therefore, that Plaintiff has not based her failure to pay a *personal* tax (and hence her exclusion from the challenged election) upon the circumstance of grounds condemned by the U. S. Supreme Court as impermissibly discriminatory or irrational, i. e., poverty, or vicarious actual payment.

In the absence of any *factual* showing or adversary record of the Plaintiff's standing, I am of the opinion that no adequate actual "case or controversy" has been properly demonstrated sufficient to invoke and sustain this Court's jurisdiction; and I would, therefore, deny the application to assume jurisdiction.